STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

| | |
|---|---|
| Aaron Carlson Corporation, | Case Type: Equity |
| Plaintiff, | Court File No. 27-CV-17-507 |
| v. | **AMENDED COMPLAINT** |
| Neal Cohen, Darren Chaffee, CoBe Equities, L.L.C.,CoBe Capital, L.L.C., LSI of America Holdings, LLC, LinCourt, L.L.C., Harvey Berk, CoBe Management, LLC, and Cocha Finance, LLC, | |
| Defendants. | |

Plaintiff Aaron Carlson Corporation, by and through its attorneys, Schwartz Law Firm, for its Amended Complaint against Defendants Neal Cohen, Darren Chaffee, CoBe Equities, L.L.C., CoBe Capital, L.L.C., LSI of America Holdings, LLC, LinCourt, L.L.C., Harvey Berk, CoBe Management, LLC, and Cocha Finance, LLC, states and alleges as follows:

## THE PARTIES

1. Plaintiff Aaron Carlson Corporation ("ACC") is a Delaware corporation operating in Minnesota as a foreign corporation pursuant to Minnesota Chapter 303 with its registered office located at 1505 Central Avenue NE, City of Minneapolis, County of Hennepin, State of Minnesota, and which owns, uses and possesses real and personal property in Minnesota, and transacts business within Minnesota.

2. Defendant Neal Cohen ("Cohen") is a New York resident who at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

3. Defendant Darren Chaffee ("Chaffee") is a New York resident who at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

4. Defendant CoBe Equities, L.L.C. ("CoBe Equities") is a New York limited liability company with its principal place of business in New York and that at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota. .

5. CoBe Capital, L.L.C. ("CoBe Capital") is a Delaware limited liability company with its principal place of business in New York and that at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

6. LSI of America Holdings, LLC ("LSI Holdings") is a Delaware limited liability company with its principal place of business in Minnesota and that at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

7. LSI Holdings was/is a shareholder of LSI Corporation of America ("LSI Corporation").

8. LSI Holdings was formed on behalf of CoBe Capital, Cohen, and Chaffee to purchase LSI Corporation.

9. LinCourt, L.L.C. ("LinCourt") is a Delaware limited liability company that at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

10. Harvey Berk ("Berk") is a New Jersey resident who at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

11. Upon information and belief, Berk is the father-in-law of Cohen.

12. CoBe Management, LLC ("CoBe Management") is a New York limited liability company with its principal place of business in New York and that at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

13. Cocha Finance, LLC ("Cocha Finance") is a Delaware limited liability company with its principal place of business in New York and that at times material herein owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota and/or committed acts in Minnesota.

14. The above captioned Court has jurisdiction over Defendants pursuant to Minn. Stat. § 543.19 as Defendants, at times material herein, owned, used and possessed real and personal property in Minnesota, transacted business within Minnesota, committed acts in Minnesota causing injury to ACC, Minnesota has a substantial interest in providing a forum and jurisdiction over Defendants, and jurisdiction over Defendants does not violate fairness and substantial justice as Defendants have purposefully availed themselves to the privilege of conducting activities within Minnesota, thus invoking benefits and protections of Minnesota's laws.

15. Venue in the above captioned Court is proper pursuant to Minn. Stat. § 542.09, which confers jurisdiction in the District Court in the County in which the cause of action or some part thereof arose.

## FACTS

16. ACC realleges and reasserts herein the allegations contained in the paragraphs above.

17. ACC has been in business for over 125-years and provides quality custom woodwork for commercial and residential projects.

18. LSI Corporation was a manufacturer and designer of laminate casework systems, solid surface and other interior products.

19. Haldeman-Homme, Inc. ("HH"), a Minnesota corporation which is not involved in this matter, issued a purchase order to LSI Corporation to furnish casework and millwork to the Colorado Veterans Association Medical Center Project, Inc. ("Project").

20. In October of 2013, LSI Corporation in turn sought and ACC provided bids to LSI Corporation for the Project with 15% profit, 15% overhead, and $20.00 per hour for shop capacity calculated in the bid.

21. ACC was awarded the bid by LSI Corporation and the parties entered into a contract relating to the Project in which ACC would build and LSI would pay for profile stations.

22. The Project included seven different purchase orders from LSI Corporation to ACC totaling $597,790.00.

23. The contract between LSI Corporation and ACC also included LSI Corporation's change orders which brought the total Project contract value to $687,825.00.

24. The dates of the purchase orders and the change orders range from January 13, 2014 to October 1, 2014.

25. ACC fully performed its duties and obligations to LSI Corporation.

26. On June 12, 2015, however, LSI Corporation cancelled the Project with ACC.

Filed in District Court
State of Minnesota
10/4/2019 1:32 PM

27. Ultimately, Hennepin County Case No. 27-CV-15-16802 was commenced and ACC obtained a $444,646.48 judgment against LSI Corporation.

## THE PARTIES:

28. ACC is a Delaware corporation operating in Minnesota as a foreign corporation pursuant to Minnesota Chapter 303 with its registered office located at 1505 Central Avenue NE, City of Minneapolis, County of Hennepin, State of Minnesota, and which owns, uses and possesses real and personal property in Minnesota, and transacts business within Minnesota.

29. Cohen is a New York resident.

30. Chaffee is a New York resident.

31. CoBe Equities is a New York limited liability company with its principal place of business in New York.

32. CoBe Equities' three members are LinCourt, L.L.C., Harvey Berk and CoBe Capital.

33. CoBe Capital is a Delaware limited liability company with its principal place of business in New York.

34. CoBe Capital is a holding company that owns CoBe Management.

35. CoBe Capital's two members are Cohen and Diana Cohen.

36. LSI Holdings is a Delaware limited liability company with its principal place of business in Minnesota.

37. LSI Holdings was/is a shareholder of LSI Corporation.

38. LSI Holdings was formed on behalf of CoBe Capital, Cohen, and Chaffee to purchase LSI Corporation.

39. LSI Holdings' current members are Cohen and Chaffee.

40. LinCourt is a Delaware limited liability company.

41. LinCourt is a holding company owned by a trust and CoBe Capital.

42. Berk is a New Jersey resident.

43. CoBe Management is a New York limited liability company with its principal place of business in New York.

44. CoBe Management's member is CoBe Capital.

45. Chaffee is the managing director of CoBe Management.

46. Cocha Finance is a Delaware limited liability company with its principal place of business in New York.

47. Cocha Finance's members include Cohen and Chaffee.

**FACTS RELEVANT TO PIERCING THE CORPORATE VEIL:**

**LSI CORPORATION DUE DILIGENCE:**

48. CoBe Capital is an investment firm purporting to specialize "in the acquisition and operating of non-core and underperforming business units in the America and Europe from leading global corporations."

49. Cohen is the founder and managing director of CoBe Capital.

50. Chaffee is the managing director of global mergers and acquisitions of CoBe Capital.

51. On January 11, 2013, CoBe Capital sent correspondence to Bayview Capital Group, LLC expressing interest in purchasing LSI Corporation.

52. The CoBe Capital email to Bayview Capital Group, LLC was sent by CoBe Capital employee Jordan Garner using his CoBe Capital email account and with a CoBe Capital signature block.

53. On January 11, 2013, CoBe Capital sent Bayview Capital Group, LLC a Cover Letter and Letter of Intent to purchase LSI Corporation.

54. The CoBe Capital Cover Letter stated: "I would like to take this opportunity to submit **CoBe Capital's interest** in **acquiring LSI Corporation of America**".

55. CoBe Capital's team "spent part of the last several weeks analyzing and evaluating" LSI Corporation.

56. CoBe Capital's team "worked diligently to gain a financial and operational understanding of" LSI Corporation.

57. CoBe Capital's Cover Letter stated: "CoBe is prepared to devote significant resources to the acquisition opportunity and we feel as though CoBe is capable of executing the transaction quickly and seamlessly."

58. The CoBe Capital Letter of Intent was executed by Chaffee.

59. The CoBe Capital Letter of Intent was for CoBe Capital to acquire LSI Corporation.

60. The CoBe Capital Letter of Intent originally offered to purchase LSI Corporation for $2,000,000.00.

61. CoBe Capital's Executive Committee reviewed and approved the acquisition of LSI Corporation.

62. Chaffee led the acquisition of LSI Corporation from a due diligence, financing and legal basis.

63. CoBe Capital put together Financial Projections for LSI Corporation and owned by LSI Holdings.

64. The **CoBe Capital Financial Projection** column for **LSI Corporation** is labeled: "CoBe Capital Projections Owned by **LSI of America Holdings, LLC**".

65. CoBe Capital offered to purchase LSI Corporation for as much as $2,800,000.00.

66. In April of 2013, Chaffee and Omar Haque travelled to Minnesota to accept the purchase of LSI Corporation by CoBe Capital.

67. Omar Haque ultimately became the President of LSI Corporation.

68. Omar Haque's dad, Shuja Haque, was a director of CoBe Capital.

69. In April of 2013, CoBe Capital, Cohen and Chaffee were informed that the health insurance monthly premium numbers for the LSI Corporation employees were four times higher than originally estimated.

70. LSI Holdings was formed to acquire LSI Corporation.

71. LSI Holdings was formed to minimize exposure to CoBe Capital and its members for debts and liabilities of LSI Corporation.

72. LSI Holdings is owned by Cohen and Chaffee.

73. Cohen and Chaffee are on the board of LSI Holdings.

**PURCHASE OF LSI CORPORATION:**

74. On or about June 1 2013, LSI Holdings purchased LSI Corporation for $1.00.

75. The Stock Purchase Agreement for the Purchase of Stock of LSI Corporation of America, Inc. by LSI of America Holdings, LLC requires any Notices to be sent to LSI Holdings "c/o **CoBe Capital**, PO Box 4552, New York, New York 10163, Attn: Mr. **Darren McKenzie Chaffee**…Email: dchaffee@**cobecapital**.com".

76. Chaffee signed the "Side Agreement" to the Stock Purchase Agreement for the Purchase of Stock of LSI Corporation of America, Inc. by LSI of America Holdings, LLC on behalf of **both** LSI Corporation and LSI Holdings.

77. The press release issued by Bayview Capital Group, LLC announced the purchase of LSI

Corporation as follows:

> Bayview Capital Group announced today that a subsidiary of HNI Corporation (NYSE: HNI), Bayview's client has sold LSI Corporation of America to CoBe Capital, a global private investment firm based in New York, New York. Terms of the transaction were not disclosed.

> Headquartered in Minneapolis, Minnesota, LSI designs and manufactures laminate casework. Having produced quality storage systems for over four decades, LSI is a recognized industry leader in the casework systems industry. Its durable storage systems are intended for customers with many users and extended hours of use such as education, healthcare, laboratory and government facilities.

> Darren Chaffee, CoBe Capital's Managing Director, stated, "We are excited to be the new owners of LSI Corporation of America. The company has a rich history of product quality and customer service, as evidenced by its strong dealer network and nationwide relationships with architects and contractors." LSI currently operates out of two plants in the Minneapolis area and its flexible manufacturing capabilities allow it to efficiently and economically run jobs of any size and offer a wide array of customization options.

> **About LSI Corporation of America**

> LSI manufactures the laminate casework most often specified by architects in America. Its success rests on a commitment to listening to customers, creating innovative solutions that meet their needs and refining its products through continual client feedback. LSI's products are used throughout the educational, healthcare, industrial and government markets. The company has been located in Minneapolis, Minn., since 1968, manufacturing and installing case goods that make its customers' environment more productive.

> **About CoBe Capital**
> CoBe Capital, a global private investment firm with a permanent capital base, specializes in the acquisition and operation of non-core and underperforming business units in the Americas and Europe from leading global corporations. CoBe Capital owns and operates a diversified portfolio of companies and strives to achieve long-term growth based on lean management and continuous improvement business philosophies. CoBe Capital was founded by Neal Cohen in 1994. For more information on CoBe Capital, please visit cobecapital.com.

78. Notwithstanding that LSI Corporation was not profitable in 2013, **Cohen and Chaffee directed LSI Corporation** to pay **LSI Holdings $90,000.00 in 2013** to **pay for LSI Holdings' legal costs in acquiring LSI Corporation**.

## INSUFFICIENT CAPITAL FOR LSI CORPORATION EXPENDITURES:

79. Omar Haque, Cohen and Chaffee discussed that LSI Corporation would need adequate working capital by way of investment from CoBe Capital, Cohen, Chaffee, and/or LSI Holdings to make LSI Corporation profitable and to provide sufficient working capital for LSI Corporation's expenditures.

80. Following the purchase of LSI Corporation by LSI Holdings, LSI Corporation required hundreds of thousands of dollars to carve out LSI Corporation from the seller, for a new phone system for LSI Corporation, to transfer the LSI Corporation information, and to operate LSI Corporation separately from the seller.

81. While both Cohen and Chaffee recognize that cash is critical to running a business, LSI Holdings, CoBe Capital, Cohen, and Chaffee invested no funds into LSI Corporation.

## BELL STATE BANK LINE OF CREDIT:

82. Rather than invest any funds, Cohen and Chaffee had LSI Corporation initiate a line of credit in the amount of $1,500,000.00 from Bell State & Trust.

83. LSI Corporation President, Omar Haque, did not believe it was in LSI Corporation's best interests to take out the $1,500,000.00 line of credit rather than the funds being invested in LSI by Cohen and Chaffee as originally discussed.

84. LSI Holdings never put any capital into LSI Corporation.

85. **Chaffee**, on **behalf of CoBe Management**, arranged the bank financing with Bell State & Trust for **LSI Corporation**.

86. CoBe Management is managed by Chaffee.

87. CoBe Capital is the holding company for CoBe Management.

88. Cohen and Chaffee loaned money to Cocha Finance to be pledged as collateral to Bell State & Trust for LSI Corporation lending purposes.

89. Both **LSI Corporation** and **LSI Holdings** were required to execute the General Indemnity Agreement for Arognaut Insurance Company.

90. On or about September 13, 2013, Bell State & Trust provided the line of credit ("Loan") as evidenced by a Promissory Note dated September 13, 2013, ("Note") and pursuant to the terms and conditions of a Business Loan Agreement ("Loan Agreement").

91. Pursuant to the Loan Agreement, **LSI Holdings** provided an unlimited guarantee for **LSI Corporation**.

92. LSI Corporation's performance and obligations under the Note and Loan Agreement were secured, in part, by a Commercial Security Agreement dated September 13, 2013 ("Security Agreement"), executed by LSI Corporation in favor of Bell State & Trust, pursuant to which LSI Corporation granted to Bell State & Trust a blanket security interest in substantially all of LSI Corporation's assets.

93. **LSI Holdings** executed a Commercial Guaranty on September 13, 2013 for **LSI Corporation's Loan**.

94. LSI Holdings' Commercial Guaranty was executed by Chaffee.

95. **CoBe Management**, by and through Chaffee, executed a Subordination Agreement on September 13, 2013, as part of the Loan for **LSI Corporation**.

96. The Subordination Agreement was executed by **CoBe Management** by and through Cohen who signed his name "Managing Member of **CoBe Capital LLC**".

11

97. The Loan was amended on a number of occasions by certain Note Modifications and Forbearance Agreements, notably on February 10, 2015 (increasing the maximum amount available pursuant to the credit facility to $2,300,000.00), April 6, 2015 (increasing the maximum amount available pursuant to the credit facility to $3,500,000.00), June 10, 2015 (increasing the maximum amount available pursuant to the credit facility to $5,000,000.00), and August 10, 2015.

98. The Note Modification and Forbearance Agreement provided a limit on **LSI Corporation's lending** based upon the **pledges from Cocha Finance**.

## OPERATION OF LSI CORPORATION:

99. LSI Holdings' corporate records are maintained at CoBe Capital's office in New York, New York, which shares the same office address as CoBe Management and CoBe Equities.

100.    Chaffee maintains his LSI Corporation emails at the CoBe Management office in New York, New York.

101.    The CoBe Management, CoBe Capital and CoBe Equities respective offices are all located at the same address.

102.    Cohen and Chaffee used their CoBe Capital email accounts to email regarding LSI Corporation and LSI Holdings business.

103.    Cohen and Chaffee used their CoBe Capital email signature blocks when emailing regarding LSI Corporation and LSI Holdings business.

104.    Cohen and Chaffee would receive monthly reports from LSI Corporation's leadership team (sales, quality, manufacturing, and finance).

105.    Chaffee received daily cash reports from LSI Corporation.

106.    Cohen hired John Caufield at LSI Corporation.

107.    Chaffee hired David Aasen at LSI Corporation.

108.    Chaffee utilized and spoke to CoBe Capital's Director of Talent Acquisition regarding replacing LSI Corporation's CFO.

109.    Cohen would speak to Omar Haque, President of LSI Corporation, on the phone regarding LSI Corporation's sales and manufacturing.

110.    Cohen was very involved in the supervision of LSI Corporation management.

111.    "[E]veryone reported to [Cohen]" at LSI Corporation.

112.    Chaffee would frequently travel to Minnesota to speak to LSI Corporation's CFO about LSI Corporation's financial reports.

113.    LSI Corporation did not hold formal shareholder meetings or director meetings to vote and approve actions by LSI Corporation.

114.    LSI Corporation decisions were made informally by Cohen and Chaffee without vote by directors or shareholders.

115.    LSI Corporation does not file state or federal tax returns and instead only LSI Holdings files state and federal tax returns.

116.    CoBe Management provided management services for LSI Corporation to help LSI Corporation improve operationally.

117.    Chaffee was the only CoBe Management personnel who advised LSI in 2013.

118.    Chaffee supported LSI Corporation on behalf of CoBe Management and Cohen supported LSI Corporation on behalf of himself.

119.    **LSI Corporation** paid **CoBe Management** $25,000.00 per month.

120.    **LSI Corporation** paid **CoBe Management** $150,000.00 in 2013.

121.    **LSI Corporation** paid **CoBe Management** at least $250,000.00 in 2014.

122.    LSI Holdings did not pay dividends.

123.    LSI Corporation did not pay dividends.

124.    **Cohen directed LSI Corporation** to **pay** all **CoBe Capital** travel expenses regarding **LSI Corporation** business.

125.    **Cohen directed LSI Corporation** to **pay** all **CoBe Management** travel expenses regarding **LSI Corporation** business.

126.    When LSI Corporation started to become profitable, Cohen and Chaffee would demand that LSI Corporation expend unnecessary funds.

127.    Cohen forced LSI Corporation to stay in LSI Corporation's building at a higher rent, plus pay thousands of dollars of building improvements, and provide a $500,000.00 security deposit to the building owners rather than move to a more affordable building.

128.    Omar Haque found a lease option that would have provided a 50% discount for LSI Corporation, but Cohen would not permit LSI Corporation to move to the new lease.

129.    Cohen and Chaffee forced LSI Corporation to spend hundreds of thousands of dollars on a new edgebander that LSI Corporation did not need, could not afford to pay cash for, and could have obtained financing for.

130.    Cohen and Chaffee directed LSI Corporation to incur $50,000.00 for a business appraisal and thousands and thousands of dollars of legal fees that LSI Corporation could not afford.

131.    LSI Corporation President, Omar Haque, believed that **Cohen and Chaffee were trying to force LSI Corporation to fail**.

## COHEN'S AND CHAFFEE'S PURCHASE OF THE LSI CORPORATION LINE:

132.    Cocha Finance assigned its rights to Cohen and Chaffee to acquire the LSI Corporation Loan.

133.    Prior to purchasing LSI Corporation's Loan, Cohen and Chaffee made a capital call on behalf of LSI Holdings to force out their 2% partner.

134.    **Cohen and Chaffee engaged the Stinson Leonard Street law** firm to provide advice and guidance about **purchasing the LSI Corporation Loan** and contributing the debt to equity.

135.    The Stinson Leonard Street law firm represented:

- LSI Corporation in Hennepin County Case Number 27-CV-15-16802, *Aaron Carlson Corporation v. LSI Corporation of America, Inc., et al.*;

- LSI Corporation in Hennepin County Case Number 27-CV-16-646, *Neal Cohen, an individual, and Darren Chaffee, an individual v. LSI Corporation of America, Inc., et al.*;

- Cohen and Chaffee in Hennepin County Case Number 27-CV-16- 18611, *Ironshore Indemnity, Inc., and Lexon Insurance Company v. David Aasen, Omar Haque, Neal Cohen, Darren Chaffee, et al.;* and

- Cohen and Chaffee in United States District Court for the Eastern District of Michigan Case Number 2:16-cv-11484, *Neal Cohen, Darren Chaffee and SSL Assets, LLC v. Jaffe Raitt Heuer & Weiss, P.C., et al.*

136.    The Stinson Leonard Street law firm provided a memorandum regarding the "**Structure of LSI debt acquisition**" for **Cohen and Chaffee** in their **individual capacities**.

137.    The Stinson Leonard Street law firm also represented LSI Corporation.

138.    **Cohen and Chaffee personally paid the Stinson Leonard Street law** firm for the preparation of the memorandum **regarding the structure of LSI Corporation's debt acquisition**.

139.    The Stinson Leonard Street law firm advised Cohen and Chaffee, in pertinent part, as follows:

> 2.  **Cocha assigns to Neal and Darren** its right to acquire from Bell State the Bell State Loan for the current outstanding balance.
> …
> 6.   Neal and Darren, as existing equal shareholders of LSI Holdings, transfer the Bell State Note in equal shares to LSI, which as a QSub is a disregarded entity.  The Bell State Loan will be canceled as a result of such transfer.  Such transfer is to be documented for tax purposes as a contribution by the equal shareholders to the capital of Holdings, and no additional stock will be issued therefor.
> …
> 4.    Purpose of the acquisition and conversion of the Note.  The **purpose of the acquisition and conversion** of the Bell State Loan through the steps set out above is to **create additional basis in the stock of LSI Holdings** already owned equally by Neal and Darren….We understand that LSI (or rather Holdings, because LSI as a QSub is a disregarded entity for federal and Minnesota tax purposes) has incurred **operating losses for 2013 and 2014,** which have been **allocated or passed through to the Holdings' shareholders** (including Ryan Fishoff) but suspended at the shareholder level ***until such time as the shareholders have additional basis in their stock to free up those suspended losses***.

140.    On or about October 13, 2015, Cohen and Chaffee purchased the Loan and all rights, title, and interest appurtenant thereto from Bell State & Trust pursuant to the Loan Purchase and Sale Agreement dated October 13, 2015.

141.    During 2015, Cohen, Chaffee and CoBe Capital successfully sold a business in Europe netting them approximately $30,000,000.00 Euros from the sale.

142.    Cohen and Chaffee informed LSI Corporation President, Omar Haque, that Cohen and Chaffee would have to pay significant sums on their gains in Europe from the sale of the business.

143.    **Cohen and Chaffee purchased the LSI Corporation Loan** to **create losses** that they could **claim on their personal tax returns as tax write-offs**.

144.    **Cohen and Chaffee purchased the LSI Corporation Loan** so they could use the **historic losses at LSI Corporation** against their **personal incomes for tax purposes**.

145.    On or about October 20, 2015, LSI Corporation, Cohen and Chaffee entered into a Loan Reaffirmation Agreement ("Reaffirmation Agreement") dated October 20, 2015, in which LSI Corporation, managed and controlled by LSI Holdings, Cohen, Chaffee, and CoBe Capital, reaffirmed the principal indebtedness pursuant to the Loan of $3,909,465.30, plus accruing interest, and Cohen and Chafee agreed to make collective additional advances to LSI Corporation of $1,045,243.44, plus accruing interest.

146.    In connection with the Reaffirmation Agreement, on or about October 20, 2015, Cohen made an additional loan to LSI Corporation in the original principal amount of $522,621.72.

147.    In connection with the Reaffirmation Agreement, on or about October 20, 2015, Chaffee made an additional loan to LSI Corporation in the original principal amount of $522,621.72.

**LSI CORPORATION DEBT TO EQUITY CONVERSION:**

148.    LSI Corporation had a process in place in which Cohen and Chaffee were going to convert the debt to equity.

149.     The contemplated debt to equity conversion by Cohen and Chaffee would have placed LSI Corporation in a much better financial position.

150.     LSI Corporation prepared a pro forma effective December 31, 2014 showing the recapitalization from debt to equity following the purchase of the Loan by Cohen and Chaffee.

151.     On September 22, 2015, LSI Corporation CFO, David Aasen, stated, in pertinent part, the following to LSI Corporation's bonding company:

> **Darren, one of the owners**, is [sic] in town and said it will take another 4 weeks (it's in the process)…we have evaluated our ability to meet our obligations and feel there isn't a substantial doubt that LSI will continue as a going concern one year from now based on:
> …
> Our owners are restructuring the line of credit (to pay off the line and convert to equity)…Our owners have demonstrated the capital, liquidity and commitment to adequately fund the business.

152.     LSI Corporation informed its bonding company that the debt to equity conversion following the purchase of the Loan by Cohen and Chaffee had taken place in November of 2015.

153.     Even LSI Corporation CFO, David Aasen, **believed that the equity investment was coming from "CoBe"**.

154.     LSI Corporation CFO, David Aasen, wrote as follows to Cohen and Chaffee on March 16, 2015:

> Assuming **CoBe makes an equity investment** and then LSI pays off the line with the proceeds, the balance sheet would have $2.25M less debt and much lower leverage.

155.     LSI Corporation's bonding company believed that **CoBe Capital** was "firmly behind" **LSI Corporation**.

156.    Chaffee even acknowledged that LSI Corporation referred to Chaffee and Cohen as "CoBe".

157.    LSI Corporation employees felt as though they were working for "CoBe".

158.    **LSI Corporation CFO, David Aasen, informed third-parties that the equity investment was being provided by "CoBe"**.

159.    LSI Corporation employee, John Caufield, informed LSI Corporation's bonding company that "**CoBe** normal operations are to hold a company long term."

160.    On or about December 4, 2015, LSI Corporation set its funding request to Cohen and Chaffee requesting funding for 2016, including making payment to ACC.

161.    On or about December 16, 2015, _**LSI Corporation was forecasting a payment in the amount of $350,056.00 to ACC**_.

162.    In December of 2015, Cohen and Chaffee came to Minnesota for LSI Corporation's monthly report out and for 2016's forecasting numbers.

163.    LSI Corporation was forecasted to make $1,000,000.00 in 2016.

164.    Cohen and Chaffee approved the 2016 forecast for LSI Corporation and then both went on vacation; Chaffee went to the Bahamas and Cohen went to Brazil.

## COHEN AND CHAFFEE PERSONALLY ENGAGE THE LSI CORPORATION RECEIVER:

165.    Cohen and Chaffee engaged Alliance Management, the eventual receiver over LSI Corporation, in late December 2015 or early January 2016 as turnaround consultants.

166.    The Alliance Management invoice was sent to "**CoBe Capital**."

167.    Cohen and Chaffee personally hired Alliance Management.

**COHEN AND CHAFFEE PREVENT THE SALE OF LSI CORPORATION:**

168.    Shortly after approving the 2016 forecast for LSI Corporation, Cohen and Chaffee changed their minds due to negotiations with the Union which were coming up in 2016 and not wanting to put more money into LSI Corporation, and thus were going to shut LSI Corporation down.

169.    Rather than shut LSI Corporation down, LSI Corporation President, Omar Haque, asked for time to find a buyer for LSI Corporation.

170.    Omar Haque found a buyer for LSI Corporation in December of 2015.

171.    Omar Haque, the buyer, and Attorney Ed Caldie of the Stinson Leonard Street law firm met in person with Cohen and Chaffee appearing telephonically regarding the sale of LSI Corporation.

172.    The buyer asked for one week to conduct due diligence on the purchase of LSI Corporation.

173.    Cohen and Chaffee refused to provide the buyer with a sufficient due diligence period and thus the sale of LSI Corporation was lost.

174.    That same night, Attorney Ed Caldie of the Stinson Leonard Street law firm presented Omar Haque with **back dated documents** to execute on behalf of Cohen and Chaffee to put LSI Corporation into receivership.

175.    Omar Haque refused to execute the LSI Corporation back dated receivership documents.

**LSI CORPORATION RECEIVERSHIP ACTION:**

176.    On January 15, 2016, Cohen and Chaffee sued LSI Corporation in Hennepin County, Minnesota District Court, Court File No. 27-CV-16-646.

177.    On January 15, 2016, Cohen, Chaffee and LSI Corporation, managed and controlled by LSI Holdings, Cohen, Chaffee, and CoBe Capital stipulated to the appointment of receiver in Court File No. 27-CV-16-646.

178.    Cohen, Chaffee and LSI Corporation stipulated to the appointment of Alliance Management, a company previously personally hired by Cohen and Chaffee and who invoiced CoBe Capital.

179.    **Chaffee executed** the **LSI Corporation** receivership documents on **behalf of both LSI Corporation** and on behalf of **Cohen and Chaffee**.

180.    Prior to the appointment of the receiver for LSI Corporation, Cohen placed his ownership of various businesses in a trust in his daughter's name to try to **avoid personal liability for LSI Corporation's debts**.

181.    Cohen and Chaffee removed Omar Hague's father, Shuja Haque, from the CoBe Capital website in an effort to avoid any connection between LSI Corporation and CoBe Capital.

182.    **Cohen informed Omar Haque that actions were taken to limit or minimize exposure if LSI Corporation's creditors sought to pierce the corporate veil**.

183.    On or about December 23, 2015, Cohen and Chaffee made additional advances to LSI Corporation in the principal amount of $90,088.80.

184.    Cohen and Chaffee also advanced additional funds to LSI Corporation's receiver in the amount of $406,048.00 and $36,119.00, respectfully.

185.    The LSI Corporation Weekly Cashflow Forecast prepared by Alliance Management and executed by Chaffee, provides: "**Funding Provided by Cobe**" in the amount of $442,167.00.

186.    Cohen and Chaffee advanced in excess of $5,486,000.00 to LSI Corporation.

187.    On **January 21, 2016**, LSI Corporation CFO, David Aasen, wrote to the LSI
Corporation Receiver, Alliance Management, indicating that the 2015 LSI Corporation
financial statements show Cohen's and Chaffee's $4,450,000.00 being **recorded as
equity** with a $500,000.00 line of credit and asking the LSI Corporation Receiver
whether that should be "**reclassified from equity to LT liabilities** for the data room".

188.    On March 4, 2016, ACC filed a Notice of Appearance and a Motion to Intervene
and for Temporary Injunction in the Receivership Action, seeking to enjoin the sale of
LSI's assets.

189.    The Court in the Receivership Action denied ACC's Motion and held that "ACC
was entitled neither to notice of the Receivership Action nor to notice of the Receiver's
Motion to Approve the Sale of Assets."

190.    The Court in the Receivership Action further held that "[a]s an unsecured
creditor, ACC could not have stopped the receiver from being appointed under Minn.
Stat. § 576.25, subd. 4, nor could it have stopped the sale from being approved."

191.    On May 6, 2016, the Court in the Receivership Action entered an Order
Approving the Receiver's Final Report, Authorizing a Final Distribution of Receivership
Assets and Ordering Discharge of the Receiver.

192.    The Receivership Action Court ordered the "Receiver to pay Cohen and Chaffee
all remaining proceeds from the receivership after payment of receivership expenses,
other secured creditors and the holdback sum."

## CONTINUATION OF ACC v. LSI CORPORATION.

193.    On June 22, 2016, ACC's Motion to Amend Complaint to add Cohen, Chaffee and CoBe as parties to ACC's claims against LSI Corporation in Court File No. 27-CV-15-16802 came duly on for hearing.

194.    On July 20, 2016, the Honorable Kevin S. Burke stated in Court File No. 27-CV-15-16802 that:

> ACC argues that, as a result of Cohen and Chafee suing LSI in Hennepin County and the issuance of a stipulated appointment of a Receiver over LSI in that matter which stayed the prosecution of all pending claims regarding LSI (including this matter), ACC was prohibited from previously seeking to add Cohen, Chaffee, and CoBe as parties in accordance with this Court's Scheduling Order. ACC asserts that LSI has refused to respond to its discovery requests and that, upon discovering the facts which serve as ACC's basis for seeking to pierce LSI's corporate veil, and as soon as ACC was granted leave to proceed here, ACC diligently sought this Court's leave to file its Amended Complaint. This far, the Court agrees with what ACC claims.

195.    On July 20, 2016, the Honorable Kevin S. Burke stated in Court File No. 27-CV-15-16802 that:

> ACC also argues that if it is not allowed to add Cohen, Chaffee, and CoBe as addition parties in this action, then they will argue they do not have notice of a trial and will have the ability to collaterally attack the judgment "because they were not parties to the original lawsuit." This Court notes, however, that ACC served both the Defendants and the potential Defendants (Cohen, Chaffee, and CoBe) with notice of this motion, so any attempt by the potential Defendants that they did not have notice would be disingenuous and should fail. But to be certain that is the result, if the Defendants and potential Defendants do not promptly respond to this Order, they shall be barred from collaterally attacking any judgment in this case. To put it in plain English, if Cohen, Chaffee, and CoBe let ACC get a judgment against LSI, the risk they will then have if ACC can pierce the corporate veil is that they will be individually responsible for the judgment.

196.    On July 20, 2016, the Honorable Kevin S. Burke stated in Court File No. 27-CV-15-16802 that:

27-CV-17-507

Filed in District Court
State of Minnesota
10/4/2019 1:32 PM

What will happen next is a trial – perhaps by default or perhaps defended. If there is a judgment against LSI Corporation, then armed with that judgment, ACC may in a separate lawsuit sue these named putative defendants and attempt to pierce the corporate veil with the evidence they have proffered to this Court for this motion.

197.    On July 20, 2016, the Honorable Kevin S. Burke held in Court File No. 27-CV-15-16802:

The Defendant, LSI Corporation, and the putative Defendants, Neal Cohen, Darren Chaffee, and CoBe Equities, LLC a/k/a CoBe Capital, LLC, shall promptly respond to this Order and participate in litigation of this case or risk entry of a default judgment against LSI Corporation.

198.    On October 21, 2016, ACC's Motion for Summary Judgment in Court File No. 27-CV-15-16802 came duly on for hearing.

199.    LSI Corporation did not appear, respond or contact the Court in response to ACC's Motion for Summary Judgment in Court File No. 27-CV-15-16802.

200.    On October 21, 2016, the Honorable Kevin S. Burke granted ACC's Motion for Summary Judgment in Court File No. 27-CV-15-16802 and granted judgment against LSI Corporation in the amount of $444,646.48.

201.    On October 24, 2016, judgment in the amount of $444,646.48 was entered against LSI Corporation in favor of ACC.

**MINNESOTA SUPREME COURT HOLDINGS:**

202.    On September 11, 2019, in Minnesota Supreme Court Case Number A18-0100, the Minnesota Supreme Court reversed the District Court's dismissal of ACC's piercing the corporate veil claims based on collateral attack and res judicata and remanded this matter to the District Court.

203.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number A18-0100 that: "Aaron Carlson Corp. argues that this was error because its piercing-the-

veil claim falls outside the scope of authority conferred by the district court's appointment order, the statute, and our precedent. We agree."

204.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number A18-0100 that: "Aaron Carlson Corp. argues that its veil-piercing claims do not "relate to" LSI's property because it seeks only to recover Cohen and Chaffee's property. We agree."

205.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number A18-0100 that:

> We conclude that Aaron Carlson Corp.'s claims do not "relate to" receivership property for two reasons. First, Aaron Carlson Corp.'s claims are those that LSI could not have brought itself. Aaron Carlson Corp.'s veil-piercing claim is a creditors' remedy that does not include LSI as a party, either as a defendant or plaintiff. Second, the veil-piercing claims seek to recover property that has always belonged to Cohen and Chaffee. The purpose of the receiver in this case was to control, liquidate, and distribute respondent LSI's property to creditors. Minn. Stat. §§ 576.21(h), (p). Even though the veil-piercing claim "relates to" the existence of the corporate entity itself, it does not pursue property that ever belonged to LSI. Expecting the receiver to bring a claim that neither belongs to LSI nor seeks to recover LSI property would stretch the statutory phrase "relating to receivership property" too far.

206.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number A18-0100 that:

> For these reasons, we hold that the receiver did not have the power to bring a veil-piercing claim because, even though the receiver may bring some claims that belong to creditors, Aaron Carlson Corp.'s attempt to pierce the corporate veil is not sufficiently "related to receivership property.

207.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number A18-0100 that:

> Having determined that the veil-piercing claims in this case could not have been brought by the receiver, we turn to the question of whether Aaron

25

Carlson Corp.'s claims are barred as an impermissible collateral attack or by res judicata. We hold that they are not barred.

208.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number

A18-0100 that:

> Respondents argue that, because the district court approved the receiver's finding that Cohen and Chaffee were secured creditors of LSI, piercing the corporate veil would show that they were not legitimate creditors. As discussed above, however, the receiver was not able to bring a veil-piercing claim against respondents, and therefore, the issues before the district court did not implicate the question of the propriety of LSI's corporate form. Further, contrary to respondents' assertions, the district court did not make any specific findings about Cohen and Chaffee's "good faith" or that their transactions were made at "arms-length." Thus, were a court to hold that Cohen and Chaffee abused the corporate form here, it would not "annul, amend, reverse, or vacate [the receivership judgment] or . . . declare it void." *Id.* The district court order approving the receiver's report provides evidence of the distinct nature of Aaron Carlson Corp.'s claims. It "barred [all parties] from asserting . . . claims, rights or interests against any [receivership] assets, the Company or the Receiver." Nowhere in the order did it bar claims against respondents or their property.

209.    The Minnesota Supreme Court held in Minnesota Supreme Court Case Number

A18-0100 that:

> We conclude that the receiver could not have brought an action to pierce the corporate veil against respondents in the receivership action. Because Aaron Carlson Corp.'s claims could not have been brought in the earlier suit, the fourth condition is not met, and Aaron Carlson Corp.'s claims are not barred by the doctrine of res judicata.

### COUNT I: PIERCING THE CORPORATE VEIL

210.    ACC reasserts and realleges the allegations contained in the above paragraphs.

211.    LSI Corporation, LSI Holdings, Cohen, Chaffee, CoBe Capital, CoBe Equities, CoBe Management, Harvey and Cocha Finance failed to observe corporate formalities.

212.    LSI Corporation, LSI Holdings, Cohen, Chaffee, CoBe Capital, CoBe Equities, CoBe Management, Harvey and Cocha Finance were aware of LSI Corporation's

insolvency at the time in which LSI Corporation entered into the transactions with ACC which are at issue in this lawsuit.

213.    LSI Corporation, LSI Holdings, Cohen, Chaffee, CoBe Capital, CoBe Equities, CoBe Management, Harvey and Cocha Finance exercised complete domination of LSI Corporation in respect to the transactions by and between LSI Corporation and ACC.

214.    LSI Holdings, Cohen, Chaffee, Cocha Finance and CoBe Capital exercised complete domination of LSI Corporation to commit wrongs against ACC which resulted in ACC's injuries as set forth herein.

215.    ACC is requesting that the Court pierce the corporate veil and hold LSI Holdings, Cohen, Chaffee, CoBe Capital, CoBe Equities, CoBe Management, Harvey and Cocha Finance liable for LSI Corporation's liabilities as set forth herein to avoid injustice and fundamental unfairness.

216.    LSI Corporation, LSI Holdings, Cohen, Chaffee, Cocha Finance and CoBe Capital operated LSI Corporation in an unjust manner, including, but not limited to, LSI Corporation entering into the transactions with ACC which were the subject of Court File No. 27-CV-15-16802 that LSI Corporation knew, or should have known, was unable to meet its payment obligations.

217.    Cohen, Chaffee, CoBe Equities, CoBe Capital, LSI Holdings, LinCourt, Berk, CoBe Management and Cocha Finance are liable to ACC for judgment entered in Court File No. 27-CV-15-16802 against LSI Corporation under the piercing the corporate veil theory.

218.    There would be injustice or fundamental unfairness if the corproate veil of LSI Corporation was not pierced to require Cohen, Chaffee, CoBe Equities, CoBe Capital, LSI

Holdings, LinCourt, Berk, CoBe Management and Cocha Finance to pay the judgement entered in Court File No. 27-CV-15-16802.

219.    ACC requests a judgment from this Court that Cohen, Chaffee, Equities, CoBe Capital, LSI Holdings, LinCourt, Berk, CoBe Management, and Cocha Finance must pay the judgment entered in Court File No. 27-CV-15-16802 and all costs and interests to ACC.

## PRAYER FOR RELIEF

WHEREFORE, Aaron Carlson Corporation prays for judgment against Defendants Neal Cohen, Darren Chaffee, CoBe Equities, L.L.C.,CoBe Capital, L.L.C. LSI of America Holdings, LLC, LinCourt, L.L.C., Harvey Berk, CoBe Management, LLC, Cocha Finance, LLC and Stevens Industries, Inc. as follows:

A.  For all monetary relief, including pre and post-judgment interest and costs, available to ACC against Cohen, Chaffee, CoBe Equities, CoBe Capital, LSI Holdings, LinCourt, Berk, CoBe Management, and Cocha Finance under the piercing the corporate veil theory;

B.  For costs, disbursements and attorneys' fees as allowed by applicable law; and

C.  For such other and further relief as the Court deems just and equitable.

Dated: October 4, 2019                    **SCHWARTZ LAW FIRM**

                                          /s Brandon M. Schwartz
                                          Brandon M. Schwartz (392008)
                                          Michael D. Schwartz (98164)
                                          600 Inwood Avenue N.
                                          Suite 130
                                          Oakdale, MN 55128
                                          (651) 528-6800
                                          brandon@mdspalaw.com
                                          michael@mdspalaw.com
                                          Attorneys for Plaintiff


## ACKNOWLEDGMENT

The undersigned hereby acknowledges that sanctions may be imposed pursuant to Minnesota Statute § 549.211.

Dated: October 4, 2019                    **SCHWARTZ LAW FIRM**

                                          /s Brandon M. Schwartz
                                          Brandon M. Schwartz (392008)
                                          Michael D. Schwartz (98164)
                                          600 Inwood Avenue N.
                                          Suite 130
                                          Oakdale, MN 55128
                                          (651) 528-6800
                                          brandon@mdspalaw.com
                                          michael@mdspalaw.com
                                          Attorneys for Plaintiff